The plaintiff brought this action before a justice of the peace to recover the sum of $182, the balance claimed to be due for lumber sold and delivered to the defendant through one J. A. Townsend, who, the plaintiff alleged, was the agent of defendant to buy the lumber, but this allegation was denied by the defendant, and he also denied that he is indebted to the plaintiff in any amount. The justice (493) gave judgment for the plaintiff and the defendant appealed, and the Superior Court, after hearing the evidence, nonsuited the plaintiff on motion of the defendant and the latter excepted and appealed.
The case turns upon the question whether the said Townsend, at the time the lumber was purchased, was the agent of the plaintiff and authorized to buy for him as he did. In order to establish the affirmative of this issue joined between the parties, the plaintiff introduced in evidence an agreement between Townsend and Westhall, dated January 13, 1903, by which the former agreed to ship to the latter all the lumber to be manufactured from timber taken from, and to be taken from, the land described in a certain deed of trust made by Townsend to A. S. Abernathy, as well as from all other land the timber on which the said Westhall had already contracted or thereafter contracted to buy, and all other lumber which Townsend should buy from any and all other persons. It was further agreed that Westhall should credit Townsend on the debt secured by the deed of trust with the money due for lumber manufactured from timber cut on the land described in the deed of trust at certain prices specified in the contract, and that Townsend should receive credit at the same prices for the lumber bought by him and shipped to the defendant with certain deductions.
The contract contains this clause: "Said party of the second part is to furnish to the party of the first part, at his discretion, such sums of money as may be necessary for him, the said party of the first part, to pay for such lumber as he may buy from such other person or persons, but the said party of the first part shall buy such lumber only at such prices as shall be agreed upon between him and the party of the second part, and said purchases of lumber so made by the party of the *Page 352 
(494) first part shall always be in the name of and for the party of the second part, in whom the title shall always be and remain. It is understood and agreed between the parties that the party of the second part is not to pay for or become chargeable with the cost of logging or manufacturing into lumber the timber taken from said land mentioned and described in said deed of trust, or for the timber bought by or to be bought by the party of the second part, nor is he to pay for or become chargeable with the cost of hauling the timber from said land to the place of manufacturing the same into lumber, or for hauling said lumber from the place of manufacture to the place of shipment."
The plaintiff, examined in his own behalf, testified that he sold the lumber in 1903 to Townsend, who said that he was buying it for Westhall; that he sold it on Westhall's credit, and Townsend said that Westhall was to furnish the money. The plaintiff hauled the lumber to the railroad station and turned it over to Townsend, who paid for it with checks drawn by him on the bank payable to the plaintiff's order. On the face of each check was this endorsement in the plaintiff's handwriting: "This check for lumber bought for W. H. Westhall." The defendant objected to the introduction of the checks; the objection was overruled and the defendant excepted. The other testimony was not objected to. The plaintiff further testified that he had been paid $250 on the contract and sale of the lumber, and that there is still due him a balance of $182 by the defendant. The latter told the plaintiff that he had possession of a part of the lumber, and the plaintiff saw about 10,000 feet of the lumber in the possession of the defendant after he took charge of Townsend's property. The lumber was worth $10.50 per thousand feet. Townsend had become a bankrupt and left the State and the Court ordered his property to be turned over to the plaintiff. The plaintiff knew nothing of the written contract or its contents until after he had sold the lumber to Townsend. He (495) relied on the latter's statement that he was buying for Westhall. A witness, A. S. Abernathy, testified that he had a conversation with the plaintiff before this suit was brought, in which he said that Townsend told him he bought the lumber for Westhall, though the plaintiff did not claim that Westhall was liable.
It is well settled that on a motion to nonsuit or to dismiss under the statute, which is like a demurrer to evidence, the Court is not permitted to pass upon the weight of the evidence, but the evidence must be accepted as true and construed in the light most favorable to the plaintiff, and every fact which it tends to prove must be taken as established, as the jury, if the case had been submitted to them, might have found *Page 353 
those. facts upon the testimony. Purnell v. R. R., 122 N.C. 832, Hopkinsv. R. R., 131 N.C. 463. Tested by this rule, we think there was some evidence which tended to show that Townsend was acting as agent for the defendant when he bought the lumber. The clause in the contract between Townsend and the defendant under which the latter agreed to furnish the money with which Townsend was to buy the lumber, the title to the lumber to remain in the defendant, the prices to be fixed by agreement between them and the purchases to be made for and in the name of the defendant, was evidence fit to be considered by the jury upon the question of agency. If Townsend was buying the lumber for the purpose, of selling it to the defendant, such a stipulation as the one we have just mentioned would hardly have been inserted in the contract. If such was the nature of the transaction why did the defendant furnish the money to make the purchases and require that the lumber should be bought in his name and for him and that the title should be in him? This is rather an unusual method of buying property through one who is not the agent of the purchaser, but who is buying for himself for the purpose of reselling. If Townsend (496) was buying on his own account, but under an agreement to sell the lumber so bought by him to the defendant, we do not see why the purchase should be made for the defendant and in his name, and why the title should vest in the defendant at the very time the purchase was made. It may be that all this can be explained, but it at least shows that the plaintiff is entitled to have the contract submitted to the jury for their consideration, in connection with any other evidence which may tend to strengthen or weaken the argument based upon it.
But the plaintiff himself testified that he sold the lumber to Townsend and Westhall under the contract; that Townsend said he was buying the lumber for Westhall, who furnished the money, and the plaintiff further testified that he sold the lumber on Westhall's credit. This evidence was not objected to by the defendant, and we are unable to, see why it was not proper for the jury to consider it. It is true that an agency to buy for cash does not imply authority in the agent to pledge the credit of the principal. An agent can only contract for his principal within the limit of his authority, and persons dealing with an agent having limited powers must generally inquire as to the extent of his authority. But if the agent is authorized to buy for cash, to be furnished by the principal, and he violates his instructions and buys on credit, and the principal thereafter receives the goods so bought by his agent and appropriates them to his own use, he is liable for the price unless he can show that he furnished his agent with the necessary funds *Page 354 
to buy the lumber and the latter nevertheless bought on a credit, and that the principal received the goods without any notice of that fact and will be prejudiced if he is made to pay for them.
In this case there is evidence that the defendant had the lumber, or at least some of it, in his possession, and told the plaintiff (497) that he had some of it, and it does not appear whether he had supplied his alleged agent with sufficient funds to make the purchases time to time. Surely he should not be allowed to keep the lumber if he had failed in this respect and the lumber had not been paid for. Patton v. Brittain, 32 N.C. 8; Miller v. Lumber Co., 66 N.C. 503;Brown v. Smith, 67 N.C. 245.
There is evidence to the effect that the defendant stated to the plaintiff that the property was given to him by order of the Court, but the jury might have rejected this testimony and found the facts in accordance with the other testimony in the case and the plaintiff's contention, and the rule is that the plaintiff is entitled to have the case go to the jury, if, in any view of the evidence, or by any combination of the facts which the testimony tends to prove, he may be able to recover.
The evidence in the case in support of the plaintiff's cause of action may not be very conclusive, and the defendant may show that he is the rightful owner of the lumber, but we are not at liberty to express any opinion as to these matters, nor are we permitted to weigh the testimony and decide where the preponderance is. We can only pass upon the question whether there was any evidence legally sufficient to be submitted to the jury for the purpose of sustaining the plaintiff's side of the issue. We think there was some evidence of that character upon the record as now presented. The entries on the checks could be competent only in corroboration of the plaintiff, who testified that Townsend told him he was buying for Westhall, and he (the plaintiff) sold the lumber on Westhall's credit. We do not now perceive upon what ground they can be competent as substantive testimony. The mere declaration of the plaintiff that the checks were given for lumber bought for Westhall is not competent even to prove that they were so given, as against the defendant, nor that Townsend was authorized to (498) buy on the credit of Westhall, nor to prove any other material fact. It is merely an unsworn declaration, which is not substantive proof, and the fact that the checks went into the possession of Westhall does not change its character or impart to it probative force. The judgment of nonsuit must be set aside and a new trial awarded. Error. *Page 355 
 Cited: Craft v. R. R., 136 N.C. 51; S. c., 137 N.C. 31; Kearns v. R.R., 139 N.C. 482; Millhiser v. Leatherwood, 140 N.C. 235; Swindell v.Latham, 145 N.C. 148; Strickland v. Perkins, ib., 94; Metal Co. v. R. R.,ib., 297; Cotton v. R. R., 149 N.C. 230; Freeman v. Brown, 151 N.C. 114;Busbee v. Land Co., ib., 514.